IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNEST KEISTER, | : | |
| | : | |
| Plaintiff | : | |
| | : | No. 4:13-cv-00118 |
| v. | : | |
| | : | (Judge Brann) |
| PPL CORPORATION and | : | |
| INTERNATIONAL | : | |
| BROTHERHOOD OF | : | |
| ELECTRICAL WORKERS LOCAL | : | |
| 1600 | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**June 13, 2014**

For the following reasons, plaintiff Ernest Keister's motion for leave to file a second amended complaint (June 24, 2013, ECF No. 21) is granted.

**I.   General Background**

On January 17, 2013, plaintiff Ernest Keister filed a complaint (ECF No. 1) setting forth two claims of alleged discrimination on the basis of age – one under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. (hereinafter, "ADEA"), and another under the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. (hereinafter, "PHRA") – and one claim alleging a

1

violation of the Labor Management Relations Act, 1947 (hereinafter, "LMRA"). All three claims were alleged against both defendants, PPL Corporation (hereinafter, "PPL") and the International Brotherhood of Electrical Workers Local 1600 (hereinafter, "Local 1600").

On March 14, 2013, PPL moved to dismiss the Complaint (ECF No. 8); Keister responded by filing an Amended Complaint on April 15, 2013 (ECF No. 14). Keister's Amended Complaint looked a lot like the original – the same three claims, each alleged against both defendants – but included additional averments in support of his claims.

On May 1, 2013, PPL moved to dismiss the Amended Complaint; Keister filed a brief in opposition on May 14, 2013. (ECF Nos. 16 & 19). Local 1600 moved to dismiss on June 11, 2013. (ECF No. 20).

On June 24, 2013, Keister moved for leave to file a Second Amended Complaint. (ECF No. 21). The proposed Second Amended Complaint includes the same three claims, but names only PPL as defendant on the age discrimination claims. (Keister maintains that both defendants violated the Labor Management Relations Act.) The Second Amended Complaint also amends various averments in support of Keister's claims.

PPL opposes Keister's motion to amend on the ground that the amendment

is futile. (See PPL Opp'n Br. July 10, 2013, ECF No. 24 at 8-15). See also Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) ("Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given, in the absence of circumstances such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment."). Since allowing an amendment to a complaint is futile when "the amendment will not cure the deficiency in the original complaint or [when] the amended complaint cannot withstand a renewed motion to dismiss," the Court will determine whether to grant Keister's motion to amend by measuring his proposed Second Amended Complaint against the standard applied on a motion under Fed. R. Civ. P. 12(b)(6).

## II.   Fed. R. Civ. P. 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 662. The goal behind the standard is to weed out those claims that do not present "enough" factual matter, assumed to be true, "to raise a reasonable expectation that discovery will reveal evidence" in support of

the claims. Twombly, 550 U.S. at 556. Where a "plaintiff[] [fails to] nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." Id. at 570.

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that,

> after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 556 U.S. at 678-79]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id. at 679].

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

**III.   The Proposed Second Amended Complaint**

According to Keister, he has been a PPL employee since 1978. (Second Am. Compl., June 24, 2013, ECF No. 21-1 ¶ 4). Since that time, he has held a number of titles: "Technical Assistant Susquehanna," "Senior Technical Assistant Susquehanna," and his current title, "Nuclear Information Services Technician." (Second Am. Compl. ¶¶ 7, 18). As important as his current title sounds, however, Keister's "job description and his pay grade do not reflect his actual job duties, and he is not being paid for what he is actually doing." (Id. ¶ 17).

Keister has requested that his job description and pay grade be realigned

with his actual responsibilities, and PPL has promised to "address the issue," but nothing has come of these promises because, Keister believes, PPL "assum[es] that [Keister] will soon retire and the problem [will] then be moot." (Id. ¶¶ 19, 23). Keister has been at his current pay grade since 2002. (Id. ¶ 22). At one point he was invited to re-write his job description, but PPL "made no effort to go forward officially" with the re-write because, Keister believes, PPL "has not been serious in [its] efforts to remedy the pay disparity and job classification issue." (Id. ¶ 21). The reason for this lack of seriousness, Keister believes, is that a realignment of his job description and pay grade "would increase his pay and ultimately increase his funds at the time of retirement." (Id. ¶ 32).

    Keister, who was born in 1947, asserts enigmatically that PPL "has hired younger employees into similar positions that were doing the same amount of work." Id. ¶ 31). Standing alone, it is not clear whether the "positions" of these "younger employees" are "similar" in description and pay grade to the position that Keister currently occupies or the position that he wants. But in his First Amended Complaint, Keister avers that "younger people who have been hired in recent years in similar capacities have not been restricted to the job classification and salary that [Keister] has been locked into." (First Am. Compl., Apr. 15, 2013, ECF No. 14 ¶ 24). Keister seems to be alleging – albeit by way of a locution that renders his

point all but incomprehensible – that younger employees performing duties similar to his actual duties have job descriptions and pay grades that reflect their actual duties, whereas he does not.

Local 1600 is Keister's collective bargaining representative, but it has "refus[ed]" and "fail[ed]" to "pursue [Keister's] legitimate grievance through the grievance and arbitration process provided by the collective bargaining agreement." (Second Am. Compl. ¶ 25). Under the applicable collective bargaining agreement, Keister asserts, employees may request a reevaluation of their job description an unlimited number of times. (Id. ¶ 38). Local 1600 has been aware of PPL's failure to update Keister's job description, and Keister has sought assistance from the union, but he has "received very little if any [sic] assistance" with his reevaluation requests. (Id. ¶ 42). Specifically, the "union local chose not to pursue the matter to arbitration." (Id. ¶ 44). As recently as six months before filing his original Complaint, Keister was attempting to convince Local 1600 to work on his behalf. (Id. ¶ 46).

## IV. Discussion

### (a) Keister's ADEA/PHRA Claims

The ADEA prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

6

individual's age." 29 U.S.C. § 623(a)(1). The PHRA also prohibits discrimination on the basis of age, and is interpreted coextensively with the ADEA. Burton v. Teleflex, Inc., 707 F.3d 417, 432 (3d Cir. 2013).

To state adequately a claim for age discrimination, the Complaint's factual assertions should track the elements of the prima facie case that comprises the plaintiff's initial burden of production under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009) (McDonnell Douglas framework applies to ADEA claims); Badger v. City of Philadelphia Office of Prop. Assessment, -- F. App'x --, 2014 WL 1428496, at *2-*3 (3d Cir. Apr. 15, 2014) (considering elements of prima facie case on motion to dismiss). Adapted to the context of this case, see Sarullo v. United States Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (the "prima facie test remains flexible and must be tailored to fit the specific context in which it is applied"), Keister must plausibly allege (1) that he is age 40 or older, (2) that he is the victim of an adverse employment decision (e.g., failure to promote), (3) that he is qualified for the position to which he seeks promotion, and (4) that otherwise similarly situated but younger employees have been treated more favorably (e.g., they have been promoted), permitting an inference of age discrimination. See Burton, 707 F.3d at 426.

PPL directs its fire at Keister's pleading of the fourth element: "Plaintiff has not even alleged that he was treated less favorably than a <u>sufficiently younger individual</u>. Tellingly, Plaintiff has not even identified any other individuals, regardless of age, who perform the same position who were paid more than he is currently being paid." (PPL Opp'n Br. at 11 (emphasis in original)).

Liberally construing the proposed Second Amended Complaint in Keister's favor, however, <u>see Fowler</u>, 578 F.3d at 210 (complaint should be construed in light most favorable to plaintiff), the Court finds that Keister has adequately alleged less favorable treatment in comparison with younger similarly situated coworkers. Albeit inartfully, Keister alleges that younger employees performing duties similar to his actual duties have job descriptions and pay grades that reflect their actual duties, whereas he does not. This allegation makes Keister's charge of age discrimination plausible.

True, Keister has not alleged that the better-treated younger employees are "sufficiently younger" to raise an inference of age discrimination, but this should be excused at the pleading stage since there is no brightline rule on what constitutes a sufficient age disparity in any case. <u>See Edgerton v. Wilkes-Barre Home Care Serv.</u>, 2014 WL 131605, at *3 (M.D. Pa. 2014). Keister should also be excused from identifying comparable individuals. His reasonable belief that there

are such individuals is sufficient at the pleading stage, although prefacing his averment with notice that it was made "on information and belief" may have been warranted. See generally Fed. R. Civ. P. 11(b)(3).

PPL claims this case is like Santiago v. Brooks Range Contract Serv., Inc., in which Santiago's ADEA clam was dismissed for "merely pleading that [he] was seventy-three years old when not hired." 2012 WL 1019060, *2 (E.D. Pa. 2012). But Keister alleges more than Santiago did: namely, that younger workers have been treated more favorably. This allegation of more favorable treatment – joined by allegations of Keister's age and qualifications, and adverse employment action against him – is sufficient to plausibly claim an ADEA violation, as the Santiago decision itself implies, see id. (indicating that ADEA claim may have passed muster had plaintiff's allegation of more favorable treatment for younger workers appeared in complaint rather than plaintiff's brief). For these reasons the Court rejects PPL's argument that amendment of Keister's ADEA and PHRA claims is futile.

**(b)** **Keister's LMRA Claim**

A unionized employee may bring suit for relief from his employer's breach of a collective bargaining agreement and his union's "discriminatory, dishonest, arbitrary, or perfunctory" representation of the employee's interests in opposition

to the employer's breach. <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 164-65 n.16 (1983). Such a suit "comprises two causes of action":

> The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.

<u>Id.</u> at 164. These so-called "hybrid" actions have a six month statute of limitations period that begins to run when the union decides to breach its duty of fair representation; however, the statute is tolled until the employee knows or has reason to know of the union's decision. <u>Vadino v. A. Valley Eng'r</u>, 903 F.2d 253, 260 n.10 (3d Cir. 1990).

With respect to Keister's LMRA claim, defendants make two arguments: (1) the six month statute of limitations blocks Keister's suit, and (2) Keister's allegations fail plausibly to allege an LMRA violation. (PPL Opp'n Br. at 12-15; Local 1600 Supp. Br., June 24, 2013, ECF No. 22 at 16-25).

But even assuming the Court should take up defendants's statute of limitations defense on a motion to dismiss, the arguments offered in support of the defense fail. Defendants contend that the statute of limitations period began to run on June 28, 2011, when Keister filed a charge – alleging the same facts underlying his Complaint – with the Equal Employment Opportunity Commission against PPL. (<u>See</u> PPL Opp'n Br. at 13; Local 1600 Supp. Br. at 20). But that date, while it

may symbolize Keister's falling out with PPL, does not necessarily set the date by which Keister knew or should have known that further appeals to his union would be futile. See Vadino, 903 F.2d at 261 ("The relevant statute of limitations question, therefore, is not only when [plaintiff] knew, or should have known, that the employer breached the contract but also when he knew, or should have known, that further appeals to the Union would be futile."). With the foundation of defendants's statute of limitations defense rejected, the remainder falls of its own weight.

The Court also finds that Keister has adequately alleged both strands of an LMRA hybrid action, if just barely. With respect to the claim that PPL breached the PPL/Local 1600 collective bargaining agreement, Keister alleges that PPL has, because of Keister's age, denied his request for an update of his job description and pay grade, an update to which Kesiter would be entitled under the collective bargaining agreement were PPL acting in good faith.

As against the union, Keister alleges that he "sought assistance from his union" and "attempt[ed] to convince [Local 1600] to work on his behalf," but despite Keister's efforts, Local 1600 has "disclaimed any responsibility to pursue" his grievance; has provided him "very little if any assistance"; has "chose[n] not to pursue [his] matter to arbitration"; and has not made "any strong effort" or "act[ed]

aggressively" on his behalf. (Proposed Am. Compl. ¶¶ 35-46). Assuming PPL violated the PPL/Local 1600 collective bargaining agreement as Keister believes, Local 1600's utter failure to advocate on his behalf can plausibly be characterized as irrational. See Roe v. Diamond, 519 F. App'x 752, 757 (3d Cir. 2013) ("To demonstrate that the Union acted arbitrarily, and thus breached its duty of fair representation, [plaintiff] must demonstrate that in light of the factual and legal landscape at the time of [its] actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.") (internal quotation marks omitted). Accordingly, Keister's amendment to his LMRA claim is not futile.

**(c)     Summary**

Amendment of Keister's claims is not futile, and no other substantial obstacles to amendment have been presented to the Court by defendants. Keister's motion for leave to amend should be granted. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

**V.     Conclusion**

For the foregoing reasons, plaintiff Ernest Keister's motion for leave to file a second amended complaint (June 24, 2013, ECF No. 21) is granted.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge